AO 106 (Rev 01/09) Application for a Search Warrant

K.N.

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One gold and off-white Apple iPhone (including any storage media contained therein) contained in a blue and black Otter Box case, seized from Jalil Cincere HUNTER on February 25, 2021, and currently located inside the ATF Columbus, Ohio Field Office vault.

Case No. 2:21-mj-265

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Southern_____ District of _____Ohio_____ *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is fully incorporated herein.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B, which is fully incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___841(a) & 846___, and the application is based on these facts:

See Affidavit in Support of Application, which is fully incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Jason Burns, ATF Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 4-14-21

_____
Judge's signature

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
Printed name and title

## **ATTACHMENT A**

One gold and off-white Apple iPhone (including any storage media contained therein) contained in a blue and black Otter Box case, seized from Jalil Cincere HUNTER on February 25, 2021, and currently located inside the ATF Columbus, Ohio Field Office vault.

# **ATTACHMENT B**

1. The items to be seized are:

   a. All items related to drug trafficking or indicia of drug trafficking, including text messages, pictures, phone numbers, and other evidence that would assist in identifying drug trafficking and those involved in drug trafficking;

   b. All items related to the possession, acquisition, and / or sale of firearms and / or ammunition;

   c. Evidence related to locations used for drug trafficking;

   d. Any logs or information related to drug customers and / or pricing, including names, phone numbers, and ledgers;

   e. Any information related to amounts of U.S. currency or other items that were obtained or sold while trafficking in drugs and / or information related to bulk currency transactions;

   f. Any information recording HUNTER's schedule or travel from November 2020 to the present; and

   g. All bank records, including records from cash applications, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Apple iPhone at the time the items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. Records and things evidencing the use of the Internet Protocol address:

   a. Records of Internet Protocol addresses used;

   b. Records of internet activity, including firewall logs, caches, browser history and i-cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jason Burns, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property described— one gold and off-white Apple iPhone (including any storage media contained therein) contained in a blue and black Otter Box case, seized from Jalil Cincere HUNTER on February 25, 2021, and currently located inside the ATF Columbus, Ohio Field Office vault—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in further detail in Attachment B.

I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since September 2005. I am a graduate of the ATF National Academy Special Agent Basic Training Program and the Federal Law Enforcement Training Center, Criminal Investigator Training Program. As a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws pertaining to narcotics violations. As a Special Agent, I am also authorized to carry firearms, execute warrants, make arrests for the offenses against the United States, and perform other such duties as authorized by law.

The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I did not, however, withhold any information or evidence that would negate probable cause.

Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that Jalil Cincere HUNTER, and others have committed the following violations of law: Title 21, United States Code, Sections 846 and 841(a), that is, conspiracy to distribute and possess with the intent to distribute controlled substances, specifically marijuana, Percocet pills, and Ecstasy (MDMA). There is also probable cause to search the cellular telephone device identified below for evidence of this crime and contraband or fruits of this crime, as described in Attachment B.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

A. The property to be searched is one gold and off-white Apple iPhone (including any storage media contained therein) contained in a blue and black Otter Box case, seized from Jalil Cincere HUNTER on February 25, 2021, and currently located inside the ATF Columbus, Ohio Field Office vault (hereinafter "Apple iPhone"). Specifically, the item is currently located at the ATF-Columbus I Field Office, 230 West Street, Suite 300, Columbus, Ohio.

As explained below, the Apple iPhone and a baggie of suspected Ecstasy (MDMA) were recovered from HUNTER during a search incident to arrest by U.S. Marshals and Task Force Officers (TFOs) that occurred in Columbus, Ohio.

B. The applied-for warrant would authorize the forensic examination of the Apple iPhone for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

**Chronological Background Regarding Ongoing Narcotics Trafficking of HUNTER.**

1. In November 2020, Columbus Division of Police (CPD) Detective & ATF Task Force Officer (TFO) J. Orick and ATF Special Agent (S/A) J. Burns initiated an investigation into an armed Drug Trafficking Organization (DTO) operating in Columbus, Ohio. TFO Orick and S/A Burns identified several members of the DTO who were associated with other criminal conduct, including armed robbery, armed carjackings, and theft of firearms. The members of the DTO were identified through numerous social media platforms, including Facebook and Instagram. The investigation revealed that these social media platforms were being used to arrange for the sale of various narcotics, including marijuana, Percocet pills, and Ecstasy (MDMA). Among the individuals identified in the DTO were Jalil Cincere HUNTER, aka "Mookie."

2. S/A Burns conducted a Computerized Criminal History (CCH) search on HUNTER. HUNTER has multiple arrests for firearm and narcotics related offenses, including Improper Handling Firearms in a Motor Vehicle (2018), Possession of Drugs (2018), Resisting Arrest (2018), Tampering with Evidence (2018), Carrying a Concealed Weapon (2020), and Assault and Agg. Robbery with Use of Firearm Specifications (2020). In 2018, HUNTER pled guilty to Possession of Marijuana, Misdemeanor, in Franklin County Municipal Court. HUNTER is currently under Indictment in the following cases out of the Franklin County, Ohio Court of Common Pleas:

    - Case #: 19-CR-2002, Improper Handling (F4) & Tampering (F3);
    - Case #: 20-CR-3635, Improper Handling/CCW/Assault (F4) & Agg. Robbery (F1) – Gun Spec.; and
    - Case #: 20-CR-4707, Failure to Appear (F4).

3. During the course of the investigation, TFO Orick and S/A Burns identified a Facebook account in the name of "**Benjamin Frank**" which appeared to belong to HUNTER. The photograph shown on the title page of the account has HUNTER flashing a large amount of U.S. currency. Through the investigation, S/A Burns became aware of HUNTER's date of birth and S/A Burns noticed that, on the date that HUNTER would be turning 21, the "**Benjamin Frank**" Facebook account had a post that stated, "Bless to see 21". On this same Facebook account, TFO Orick and S/A Burns observed the following posts as they relate to drug trafficking and firearm possession:

- November 2, 2020 – "3.5 + 25" Based on previous knowledge, training, and experience, TFO Orick and S/A Burns believe that HUNTER is posting that he is selling 3.5 grams, or one-eighth of an ounce, of marijuana for $25.00. Based on information received from CPD Patrol Officers and ATF Confidential Informant (CI) #1[1], the current street price for one-eighth of an ounce of marijuana, which is also known as "weed" or "gas," is $25.00. S/A Burns has also reviewed several Instagram messages by one of HUNTER's associates where the price for marijuana is stated to be "8th for 25," or one-eighth of an ounce for $25.00.

- November 30, 2020 – "Jerk dinners 10s Nd 30s" Based on previous knowledge, training, and experience, TFO Orick and S/A Burns believe that HUNTER is posting that he is selling Percocet pills, and that he has 10 milligram pills and 30 milligram pills. Based on information received from CPD Patrol Officers and ATF CI #2[2], Percocet pills, which are known on the street as "percs" or "jerks," come in different doses, to include 10-milligram and 30-milligram pills, and the price per pill is dependent on the dose; for example one 30-milligram pill will cost upwards to between $25.00 and $30.00 each, and one 10-milligram pill will cost up to $10.00 each.

- November 29, 2020 – HUNTER posts his Cash App account "$benjifrank530" and, based on S/A Burns' experience and knowledge of investigating narcotics trafficking, S/A Burns knows drug dealers are using cash applications to accept payment for narcotic sales;

- December 2, 2020 – "Just turned 21 been savage b4 I was 21 Glock hold 21 jus tryna blik 24" HUNTER is in a photograph holding a tan in color pistol, and based on previous knowledge, training, and experience, TFO Orick and S/A Burns believe that HUNTER is stating he has a loaded Glock pistol with 21 rounds of ammunition;

- January 8, 2021 – "Pink runts in" Based on previous knowledge, training, and experience, TFO Orick and S/A Burns believe that HUNTER is posting that he is selling a high grade of marijuana, also known as "gas." Based on information received from ATF CI #1, "runts" is a slang term for a high-grade marijuana. S/A Burns has also reviewed several Instagram messages by one

---

[1] ATF CI #1 is familiar with marijuana trafficking trends in Columbus, Ohio, is providing information for monetary compensation, and has proven to be reliable in the past. ATF CI #1 individual has prior convictions for Attempted Drug Trafficking, F-4 (1991), Attempted Possession of Drugs, M-1 (1993), Trafficking in Drugs, F-4 (1995), Fed – Distribution of Crack (1996), and Possession of Drugs, M-1 (2019).

[2] ATF CI #2 is familiar drug trafficking trends in Columbus, Ohio, is providing information for monetary compensation, and has proven to be reliable in the past. ATF CI #2 has prior convictions for Discharging Firearm, F-3 (1998), Failure to Appear, F-5 (2011) and Receiving Stolen Property, F-5 (2011).

of HUNTER's associates where the price for "og runts" is stated to be "8th for 45," or one-eighth of an ounce for $45.00. The buyer orders "Gas" or marijuana, and the seller indicates that the "runts" are "45 a 8th" or one-eighth of an ounce for $45.00. As mentioned above, regular marijuana was being sold for $25.00 for one-eighth of an ounce, however a higher quality or higher grade of marijuana, or "runts," cost the buyer $45.00 for one-eighth of an ounce in this circumstance.

4. On or about February 25, 2021, the U.S. Marshals Task Force arrested HUNTER in the rear of 1522 Wager Drive, in Columbus, Ohio, on multiple felony warrants from Franklin County. TFO Orick and S/A Burns were notified by the U.S. Marshals that HUNTER was in custody. S/A Burns was familiar with this location and has observed Instagram posts from HUNTER and other members of the DTO showing that they were present at this location in the past. S/A Burns reviewed an Instagram conversation between **benjaminfrank._** (suspected to be Jamil HUNTER) and **sin.laden** (suspected to be Sincere AKERS, who is a known a member of HUNER's social group) dated November 4, 2020. AKERS orders one-eighth (1/8) of an ounce of suspected marijuana for $25.00, and HUNTER states he is at "Gracey." Gracy LNU was an occupant at 1522 Wager Drive when HUNTER was arrested by the U.S. Marshals. A witness advised that Gracy LNU resides at the residence, and is friends with HUNTER.

5. On this same date, TFO Orick and S/A Burns responded to 1522 Wager Drive and met with the arresting officers. Investigators with the U.S. Marshals Task Force advised that surveillance was set up on the residence, and that HUNTER was observed exiting the residence and meeting with an unknown individual for a short period of time, and then returning to the residence. TFOs believed a "hand to hand" narcotics transaction took place between HUNTER and the unknown individual.

6. The U.S Marshals attempted to arrest HUNTER at the residence and advised that HUNTER fled the residence from the rear door and was taken into custody in the rear alley. During a search incident to arrest, U.S Marshals TFO's recovered a baggie of suspected Ecstasy (MDMA) pills and the subject Apple iPhone from HUNTER's person.

7. TFO Orick and S/A Burns spoke with witnesses at the scene and were advised that HUNTER sells narcotics at 1519 Wager Drive, which is across the street from 1522 Wager Drive, where HUNTER was arrested. TFO Orick and S/A Burns took custody of the suspected Ecstasy (MDMA) pills and transported them to the ATF – Columbus Field Office. S/A Burns weighted the suspected Ecstasy pills and conducted a field test on the pills. The suspected Ecstasy pills weighed approximately 12 grams and the field test for the pills came back as positive for "Methamphetamine or MDMA (Ecstasy)".

8. The Apple iPhone is currently in storage at the ATF – Columbus Field Office, 230 West Street, Suite #300, Columbus, Ohio. In my training and experience, I know that the Apple iPhone has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state, as they were when the Apple iPhone first came into the possession of the ATF.

## TECHNICAL TERMS

Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store any digital data, such as word processing documents, even if the device is not designed to access such files. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices

can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes), and utilizing computer programs. Some PDA's also function as wireless communication devices, and are used to access the Internet and send and receive email. PDA's usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDA's run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDA's may also include global positioning system ("GPS") technology for determining the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97 .178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

Based on my training, experience, and research, I know that the Apple iPhone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and a PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC DEVICES AND STORAGE

As described above and in Attachment B, this application seeks permission to search and seize data that the Apple iPhone might contain, in whatever form it is stored. Based on my knowledge,

training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, information that has been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law-enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to items described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the ATF intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

I submit that this affidavit supports probable cause for a warrant to search the Apple iPhone, as fully described in Attachment A, and seize the items described in Attachment B.

_____
Jason R. Burns
Special Agent, ATF

Sworn to and subscribed before me this 14 day of April, 2021 in Columbus, Ohio.

_____
Chelsey M. Vascura
U.S. MAGISTRATE JUDGE